CARLSON v. WALSH.

(Supreme Court, Appellate Division, Second Department. December 14, 1900.)

MASTER AND SERVANT—ASSUMPTION OF RISK—DEFECTIVE MACHINERY.

    Defendant's steam dredge had a broken ratchet wheel, and a servant was injured by placing his foot in such a position that it was crushed by the revolution of the wheel, caused by the sudden starting of the machinery. The injury occurred after dark, and while the servant was attempting to perform a certain duty without a light, but there was no necessity for him to place his foot in the dangerous position. He had formerly worked on the dredge, and knew of the defect, which the defendant's son had voluntarily promised to have repaired; and on returning to the work on the day of the injury he was at the machine in daylight, and could have seen the defect, which was in plain sight. *Held*, that the servant had assumed the risk arising from such defect.

Appeal from special term.

Action by Alfred Carlson against Augustin Walsh for personal injuries arising while in the employment of the defendant. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and JENKS, JJ.

Nelson Zabriskie, for appellant.

John Vernon Bouvier, Jr., for respondent.

WOODWARD, J. The plaintiff was employed as a deckhand upon a dredging scow, known as the "Steam Dredge No. 6," of the

defendant. He had been employed at different times upon this dredge, and was thoroughly familiar with its construction and the operation of the machinery, as appears from his evidence. The last time he was employed, previous to the time of the accident complained of, was from January 20 to January 26, 1899. He was again employed on the 3d day of March, though the dredge does not appear to have done any work until the 6th day of that month, and on the evening of that day the accident by which the plaintiff's foot was injured occurred. It appears from the evidence that one end of the shaft carrying the drum on which was wound the wire rope used in working the dredging scoop or bucket was bedded in bearings upon what was known as a "pillow block," and that on the end of the drum there had been a ratchet wheel, which came into use only when the machinery was stopped for a considerable length of time, and was intended to hold the bucket suspended in the air from the arm of the crane or derrick. The end of the drum, with the ratchet intact, was about 2 inches removed from the pillow block. It appears, however, that the ratchet attachment had been broken at some time previous to the accident, and had remained in that condition during all of the times that the plaintiff had been employed upon the scow. The result of this break, by which nearly one-half of the ratchet wheel had disappeared, was to leave a space of about $4\frac{1}{2}$ to 5 inches between a portion of the drum and the pillow block, while as to the remaining portion the space was only about 2 inches. The drum was inclosed in a house built upon the scow, and at about 7 o'clock in the evening he was ordered by the "mate" or foreman to go into the house and to screw up a turn-buckle, which had the effect of increasing the power of the friction clutch. The machinery was not in motion at the time plaintiff entered the house, and he stepped upon the pillow block in the dark in such a manner that his right foot projected over the edge of the pillow block, and into the space between the drum and the block, at the point upon the drum from which the ratchet wheel had been broken out. While in this position, and trying to adjust the turn-buckle, the "captain" or engineer started the engine, turning the drum, so that the projecting portion of the ratchet wheel caught the plaintiff's foot, crushing two of his toes. Upon the trial at the close of plaintiff's evidence the learned court dismissed the complaint, upon the motion of the defendant, on the ground that the plaintiff had failed to show that, having been aware of the break in the ratchet wheel, he had any reason for believing that the same had been repaired at the time of the accident. An exception was taken by plaintiff's counsel, and the appeal comes to this court.

Plaintiff's evidence shows that the ratchet wheel was broken at all of the times that he was employed upon the scow, that its condition was a matter of general knowledge on the part of those working with him, and that at one time the defendant's son, who is described as "some kind of a superintendent," had said that he "was going to have the wheel fixed." This statement appears to have been made gratuitously by the young man some four or five days before the

plaintiff left defendant's employ, in January, and there is absolutely no evidence that the plaintiff had any reason to believe that the repair had been made. Under these circumstances, conceding the defective ratchet wheel to have been the proximate cause of the injury, the plaintiff has failed to establish the facts necessary to entitle him to recover from the defendant, and the trial court was not in error in dismissing the complaint. The danger was both known and obvious. The work which the plaintiff was directed to perform could have been done without stepping upon the pillow block at all, and we know of no rule of law which requires an employer to make it impossible that an employé shall be injured. He has fulfilled his obligations when he has provided a reasonably safe place in which to work, has supplied tools and appliances of a reasonable character to perform the work required, and has exercised reasonable care in providing fellow servants. There was no reason for the employer to anticipate that the plaintiff, in adjusting the turn-buckle, would climb up on the pillow block, or that if he did so he would project his foot out over the block in such a position as to endanger his toes; and if the plaintiff went into the room in the dark, knowing the condition of the machinery, or at least having no reason to believe that it had been repaired, he must be deemed to have accepted the risk. The master does not insure the servant against all accidents and mishaps that may befall him in the business. The servant, when he enters into the relation, assumes not only the risks incident to such employment, but all dangers which are obvious and apparent. If he voluntarily enters into or continues in the service without objection or complaint, having knowledge or the means of knowing the dangers involved, he is deemed to assume the risks, and to waive any claim for damages against the master in case of personal injuries. Crown v. Orr, 140 N. Y. 450, 452, 35 N. E. 499. In the case at bar the plaintiff not only knew of the condition of the machine as it had existed for several months, with no reason for believing that it had been repaired, but it appears from his own evidence that he was sent into the house to do the same work, at 7 o'clock in the morning of the day on which he was injured, that he was performing at the time of his injury at 7 o'clock in the evening, so that he had the opportunity of knowing by personal observation that the wheel was in the same condition that he had left it in January preceding. The accident was one which the defendant was not bound to anticipate would happen, since it was not necessary that the plaintiff should go upon the pillow block to do the necessary work, while to the plaintiff the risk was known and obvious, and might have been obviated by the exercise of a reasonable degree of care.

The judgment and order appealed from should be affirmed, with costs. All concur; BARTLETT, J., in result only.